[No. 6999-1-III.   Division Three.   April 29, 1986.]

JAMES HOFFMAN, ET AL, *Appellants,* v. BRYAN G. CONNALL, ET AL, *Respondents.*

*Richard C. Agman,* for appellants.

*Carl Diana,* for respondents Connall.

*Terence R. Whitten, Erika Balazs,* and *Lukins & Annis,* for respondents Cardinal Realty, et al.

MUNSON, J.—James and Verna Hoffman, husband and wife, appeal the dismissal of their claims against Bryan G. and Connie J. Connall, their real estate broker, Charles Huggins, and Cardinal Realty, Inc., for their alleged innocent misrepresentation of the boundaries of rural property they purchased from the Connalls. They argue: (1) the evidence is undisputed as to the misrepresentation; (2) the realtor breached his duty to take reasonable steps to avoid disseminating false information to them; (3) certain testimony of Mr. Huggins constituted inadmissible hearsay; (4) a default judgment should have been entered against Mr. Connall when he failed to appear at trial or otherwise defend against the action; (5) they were entitled to attorney

fees at trial; and (6) the trial court erred in refusing to grant their motion for a new trial. We affirm the dismissal as to Mr. Connall, but reverse and remand for determinations on the Hoffmans' damages and the respective liabilities of the remaining defendants for those damages.

The Hoffmans were interested in purchasing land where they could keep their horse; they learned of the Connalls' property through a newspaper advertisement. They were shown the property by Mr. Huggins, an associate broker with Cardinal Realty. Mr. Huggins pointed out the boundaries of the property. He stated the Connalls had built a fence sometime after they purchased the property in 1979, approximately 6 inches west of the eastern boundary line of the property. He later testified he had no reason to doubt Mr. Connall's representations concerning the boundary lines of the premises; he inspected the property when obtaining the listing agreement and everything appeared consistent with Mr. Connall's representations.

On February 28, 1983, the Hoffmans purchased the approximate 5 acres of land, including a mobile home, horse arena and stall, and barn and fences. Later, the Hoffmans were advised by their neighbor that the fence along their eastern boundary encroached approximately 18 feet upon his land. The neighbor had purchased his property shortly before the Hoffmans' purchase and had it surveyed. The neighbor threatened to remove the fence; he plowed down the eastern boundary where he believed the true property line was located; he also parked a tractor on the Hoffmans' side of the fence.

The Hoffmans had their property surveyed, which confirmed their neighbor's assertion. The survey also indicated the fence along the Hoffmans' western boundary encroached approximately 18 feet onto their land. The north and south fence lines were similarly misplaced; the fence on the north encroached approximately 21 feet onto the County's right of way. However, the Hoffmans gained land to the south, offsetting what they lost to the north.

On September 18, 1984, the Hoffmans brought this

action for damages, alleging, *inter alia,* the defendants had negligently misrepresented the boundaries of the land. All defendants appeared and answered, except Mr. Connall who had refused postal service of process. In their answer, Mr. Huggins and Cardinal Realty filed a cross claim against the Connalls for indemnification and contribution in the event they were found liable for the alleged misrepresentations.

At trial, the Hoffmans presented evidence of their survey and the boundary lines represented by Mr. Huggins. Mr. Hoffman testified Mr. Huggins seemed certain as to the location of the boundary lines when he showed him the property and convinced him the representations were correct. Mr. Huggins made no suggestion the property should be surveyed prior to their purchase. Mr. Hoffman also stated he and his wife had no contact with the Connalls until the sale was closed.

In response, Mrs. Connall testified she never made any representations to the Hoffmans or Mr. Huggins concerning the boundaries of the property; that any information Mr. Huggins received came from her ex–husband, Mr. Connall. She further testified she and Mr. Connall were under the impression when they purchased the land in 1979 that the property had been surveyed; an unidentified real estate company had placed wooden stakes with orange fluorescent flags at the corners of the property. Mrs. Connall did not know if any of these stakes were in place when the property was listed. Mrs. Connall also testified there were remnants of an old barbed wire fence along the eastern boundary of the property when she and Mr. Connall purchased it. They later built the existing fence approximately 6 inches west of the barbed wire fence. The Connalls were divorced between the time of the sale and the commencement of this action.

Over the Hoffmans' objection Mr. Huggins testified to information Mr. Connall provided him regarding boundaries. Mr. Connall had pointed out certain corner markers to Mr. Huggins; he also was shown the remnants of an old barbed wire fence along the eastern boundary where the

Connalls constructed a new fence. Mr. Huggins further stated Mr. Connall was very adamant about the location of boundary lines; he testified he merely passed on this information to the Hoffmans.

Although Mr. Connall advised Mr. Huggins the property had been surveyed prior to their purchase, Mr. Huggins did nothing to verify this representation. Mr. Huggins also testified he intended the Hoffmans to rely upon his information about the boundary lines; he admitted he was holding himself out as an expert in real estate.

The court entered judgment in favor of the defendants, after determining Mr. Huggins had not breached a duty of care owed to the Hoffmans; the Connalls were not liable since they were unaware of any problem with the boundaries as represented. The Hoffmans' motion for a new trial based upon certain newly discovered evidence was denied; this appeal followed.

Preliminarily, we address the Hoffmans' contention the trial court erred in declining to enter a default judgment against Mr. Connall when he failed to appear and answer the complaint. Apparently, no reason was given for the denial. The record leads us to conclude service of process was ineffective in obtaining personal jurisdiction over Mr. Connall.

A return of service filed September 18, 1984, indicates Mrs. Connall had been served with summons and complaint on August 3; however, Mr. Connall could not be found. He was no longer living with Mrs. Connall. Mrs. Connall indicated he had moved to Spokane; the post office listed a forwarding address for him in Hermiston, Oregon. Later, plaintiffs' counsel spoke with Mr. Connall's father in Mead, Washington; although unable to obtain Mr. Connall's exact address, the elder Connall indicated mail addressed to his address "would or could be forwarded or given to defendant Bryan Connall."

Thereafter, an ex parte order was obtained, authorizing

service pursuant to CR 4(d)(4).[1] On September 18, 1984, "one copy of Summons and Complaint by certified mail—return receipt requested, and one copy of Summons and Complaint by regular mail" were sent to both Mr. Connall's father's address in Mead and the Hermiston, Oregon, address provided by the post office. The latter address contained both a route number and post office box number. Both certified letters were returned "refused" rather than "unclaimed."

■ These facts are similar to those in *Kennedy v. Korth*, 35 Wn. App. 622, 668 P.2d 614, *review denied*, 100 Wn.2d 1026 (1983), in which the court determined service by mail under CR 4(d)(4) was ineffectual because: (1) no attempt had been made to personally serve the defendant at a known address outside the state; and (2) the plaintiff failed to comply with the provisions of RCW 4.28.100, governing service by publication.

Generally, personal service is required to obtain personal jurisdiction over an individual defendant. *Kennedy*, at 625. Here, personal service upon Mr. Connall was not attempted at his forwarding address in Oregon. Personal service outside the state is authorized under RCW 4.28.180. *See* CR 4(e)(2). Assuming service pursuant to the court's order would have satisfied due process requirements as stated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

---

[1]CR 4(d)(4) provides:

"*Alternative to Service by Publication.* In circumstances justifying service by publication, if the serving party files an affidavit stating facts from which the court determines that service by mail is just as likely to give actual notice as service by publication, the court may order that service be made by any person over 18 years of age, who is competent to be a witness, other than a party, by mailing copies of the summons and other process to the party to be served at his last known address or any other address determined by the court to be appropriate. Two copies shall be mailed, postage prepaid, one by ordinary first class mail and the other by a form of mail requiring a signed receipt showing when and to whom it was delivered. The envelopes must bear the return address of the sender. The summons shall contain the date it was deposited in the mail and shall require the defendant to appear and answer the complaint within 90 days from the date of mailing. Service under this subsection has the same jurisdictional effect as service by publication."

306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), the Hoffmans, nevertheless, failed to comply with the provisions of RCW 4.28.100. None of the situations listed in that statute, justifying service by publication, were asserted by the Hoffmans when obtaining the order permitting service by mail; nor did the trial court make any such finding. Hence, we affirm the denial of the Hoffmans' motion for default because Mr. Connall was never effectively served with process. *See Kennedy v. Korth, supra.*

The Hoffmans next contend they were entitled to recover damages against the sellers and their agents, even though the boundary lines may have been innocently misrepresented by the defendants. Restatement (Second) of Torts § 552C(1) (1977) defines the tort of innocent misrepresentation as follows:

> One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

Consistent with the Restatement, Washington has recognized a cause of action against the owner of realty who innocently misrepresents its quantity, boundaries, or location to a purchaser. *Algee v. Hillman Inv. Co.,* 12 Wn.2d 672, 674–75, 123 P.2d 332 (1942). *See also Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 455, 565 P.2d 80 (1977); *Darnell v. Noel,* 34 Wn.2d 428, 431–32, 208 P.2d 1194 (1949); *Dixon v. MacGillivray,* 29 Wn.2d 30, 35, 185 P.2d 109 (1947); *Lyall v. DeYoung,* 42 Wn. App. 252, 258–59, 711 P.2d 356 (1985), *review denied,* 105 Wn.2d 1009 (1986).

The owner is held liable because he is presumed to know the character and attributes of the land conveyed, and the buyers are entitled to rely upon the owner's reasonable representations of the premises. *See Thompson v. Huston,* 17 Wn.2d 457, 461, 135 P.2d 834 (1943). Here, the trial

court erred in dismissing the claim against Mrs. Connall; finding the owners acted in good faith and had no reason to believe the boundary lines, as represented, were incorrect, does not absolve them of liability. *Thompson,* at 461. The fact the Connalls made no representations directly to the Hoffmans does not matter; the misinformation was originally supplied to Mr. Huggins by the owners, and he had authority to state the area of the parcel. *See Alexander Myers,* at 454–55; *see also Gnash v. Saari,* 44 Wn.2d 312, 320–21, 267 P.2d 674 (1954); *Yarnall v. Knickerbocker Co.,* 120 Wash. 205, 208–09, 206 P. 936 (1922); *Nelson v. Harkness,* 8 Wn. App. 569, 508 P.2d 173 (1973). Moreover, Mrs. Connall was not absolved from liability merely because she was not the source of the misrepresentations; her former husband and Mr. Huggins had apparent authority to act on her behalf in terms of the community when representing the location of boundaries. *See First Church of the Open Bible v. Cline J. Dunton Realty, Inc.,* 19 Wn. App. 275, 280, 574 P.2d 1211 (1978).

The issue remains whether liability for innocent misrepresentation should extend to the owner's agent, the real estate broker, where that party serves as a conduit for the sellers' misrepresentations of the realty. Recent cases addressing a broker's liability for disseminating erroneous information supplied by the seller speak in terms of negligence, *i.e.,* the broker's failure to exercise reasonable care in ascertaining the true character and attributes of the property to avoid disseminating false information to buyers. *See Tennant v. Lawton,* 26 Wn. App. 701, 706–07, 615 P.2d 1305 (1980); *First Church of the Open Bible v. Cline J. Dunton Realty, Inc., supra.* However, the particular issue here is one of first impression in this state; most jurisdictions faced with the issue have held a broker liable for innocent misrepresentations. *Bevins v. Ballard,* 655 P.2d 757 (Alaska 1982); *Berryman v. Riegert,* 286 Minn. 270, 175 N.W.2d 438, 442 (1970); *Polk Terrace, Inc. v. Harper,* 386 S.W.2d 588, 593 (Tex. Civ. App. 1965); *Bell v. Bradshaw,* 342 S.W.2d 185 (Tex. Civ. App. 1960); *Spargnapani v.*

*Wright,* 110 A.2d 82, 85 (D.C. 1954); *Lawlor v. Scheper,* 232 S.C. 94, 101 S.E.2d 269, 271 (1957). *Contra, Lyons v. Christ Episcopal Church,* 71 Ill. App. 3d 257, 389 N.E.2d 623, 625 (1979).

In *Bevins,* a real estate broker misrepresented the adequacy of a well on the property the plaintiffs had purchased. Based on public policy considerations involving real estate transactions, the majority in *Bevins,* at 763, held that liability for innocent misrepresentation should extend to the broker even though he served as a conduit for the owner's misinformation because:

(a) The parties frequently do not deal on equal terms;

(b) Brokers are licensed professionals, possessing superior knowledge of the realty they sell and the real estate market generally;

(c) Prospective purchasers tend to rely on a broker's representations: (1) as purchasers are entitled to rely on an owner's representations, they should also be entitled to rely on the broker's representations; (2) otherwise brokers could use misleading statements in selling the property, yet remain immune from liability by simply remaining ignorant of the property's true characteristics.

Such a rule would "tend to lessen the likelihood of transactions tainted by misinformation and confusion." *Bevins,* at 763. As between the broker who communicated the misrepresentation, and the purchaser whose only fault was to rely on the broker, likewise,

> [b]rokers . . . can protect themselves from liability by investigating the owner's statements, or by disclaiming knowledge, by requiring the seller to sign at the time of listing a statement setting forth representations which will be made, certifying that they are true and providing for indemnification if they are not.

*Bevins,* at 763.

Although the dissent in *Bevins,* at 764, expressed concern over making the broker a guarantor of representations emanating from the seller, there is no reason not to do so when, as here, the broker clearly intended the buyers to

rely upon his representations of the property while holding himself out as a real estate expert. Thus, Mr. Huggins was more than a mere conduit for information supplied by the sellers; he not only misrepresented the boundaries, but represented they were true and accurate.

By the same token, Mr. Huggins breached his duty to take reasonable steps to avoid disseminating false information to buyers. In *Tennant,* at 706, the court discussed a real estate broker's duty when repeating material representations of the seller to the buyer:

> The underlying rationale of his duty to a buyer who is not his client is that he is a professional who is in a unique position to verify critical information given him by the seller. His duty is to take reasonable steps to avoid disseminating to the buyer false information. *See Alexander Myers & Co. v. Hopke, supra; Stenson v. Thrush,* 36 Wn.2d 726, 219 P.2d 977 (1950); *First Church of the Open Bible v. Cline J. Dunton Realty, Inc., supra* at 279 n.2. The broker is required to employ a reasonable degree of effort and professional expertise to confirm or refute information from the seller which he knows, or should know, is pivotal to the transaction from the buyer's perspective.

Mr. Huggins' statements fell short of that legal standard. The record supports the trial court's findings and conclusions that he acted in good faith and under an honest mistake. However, he was aware Mr. Connall's representation of the boundaries was based upon an assumed survey made before the Connalls purchased the land. Mr. Huggins acknowledged he did nothing the confirm this, but relied solely upon his inspection of the premises. Under these circumstances, it cannot be said Mr. Huggins "employ[ed] a reasonable degree of effort and professional expertise" to confirm the Connalls' information which was material to the Hoffmans' purchase. *Tennant,* at 706; *First Church,* at 281.

Having concluded Mrs. Connall and the realtor were liable, we do not address the Hoffmans' remaining contentions. Their request for attorney fees on appeal is denied;

542

they have provided no basis upon which an award of such fees would be justified; nor are they entitled to attorney fees for the trial. An examination of the parties' real estate contract indicates they did not intend the attorney fees provision to apply to this type of litigation; this action is based upon tort, not enforcement or breach of the real estate contract. *See generally Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 218, 543 P.2d 338 (1975).

The judgment is affirmed as to Mr. Connall, but reversed as to the remaining defendants. The case is remanded for a determination of the Hoffmans' damages and further proceedings on the realtor's cross claims against Mrs. Connall.

GREEN, C.J., and McINTURFF, J., concur.

Review granted by Supreme Court July 8, 1986.