[No. 52768–7.   En Banc.   April 30, 1987.]

JAMES HOFFMAN, ET AL, *Respondents,* v. BRYAN G.
CONNALL, ET AL, *Respondents,* CARDINAL
REALTY, INC., ET AL, *Petitioners.*

*Lukins & Annis, P.S.*, by *Terence R. Whitten* and *Erika Balazs*, for petitioners.

*Richard C. Agman*, for respondents.

*Ralph W. Holmen, Thomas L. Fishburne*, and *Donna R. Roper* on behalf of the Association of Realtors, amici curiae for petitioners.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether a real estate broker[1] is liable for innocently misrepresenting a material fact about real estate to a buyer.

In January 1983, Bryan G. and Connie J. Connall, hereinafter referred to as the sellers, signed a listing agreement with Cardinal Realty, Inc. and Charles Huggins, an associate broker with Cardinal Realty. The sellers wanted to sell 5 acres of land north of Spokane. A few days after signing the listing agreement, one of the sellers showed the property to the Cardinal broker. The seller pointed to a stake or piece of pipe as the southeast corner of the property, and the broker saw that the stake lined up with an old fence line to apparently form the east boundary. The sellers had built a new fence approximately 6″ inside the old fence line and a corral and horse shed stood just inside the new fence. The seller insisted that his corral was inside the property line.

The seller then showed the broker a wooden stake, which he said marked the southwest corner of the property. The broker saw that the stake was in line with a row of poplar trees that evidently formed the west boundary. To the north of the trees was a pole that apparently was near the northwest corner. The seller could not find the stake marking the northwest corner of the property, and the two men

---

[1]As have the parties, we use the term "broker" herein to include real estate agents and salespeople.

felt they were close to but could not exactly locate the northeast boundary.

The broker later stated that the seller "was very emphatic about what he bought and where he built", and never gave the broker any indication that the boundaries he pointed out were incorrect. The seller told the broker that the property had been surveyed before he and his wife bought it. The broker did not verify that statement.

James and Verna Hoffman, the buyers herein, read about the property in the newspaper. The property's improvements—corral, cattle chute, barn and shed—were important to the buyers because they owned a horse and wanted to get involved with 4–H horse activities. They called the broker and visited the property with him. He pointed out the fence as the east boundary, and the pole as the northwest boundary. He gave an approximate indication of the northeast corner but could not find the marker for the southwest corner. The broker later testified that in telling the buyers about the property, "there was no doubt in my mind of where the proper property line was". The broker did not recommend that the buyers obtain a survey.

The buyers bought the property on February 28, 1983. In May 1983 a neighbor told them that a recent survey showed that their east fence encroached upon his property. The buyers had their own survey done and discovered that their east–side improvements encroached upon their neighbor's property by 18 to 21 feet. The encroachment consisted of the fence built by the sellers and part of the corral, cattle run and horse shed. The buyers discovered it would cost almost $6,000 to move the improvements onto their own property.

On September 18, 1984, the buyers brought an action for damages against the sellers and the broker, alleging that they misrepresented the true boundary lines. Following a bench trial, the trial court found as a fact that there was nothing to give the broker or the sellers notice that anything was wrong with the property lines. The court concluded that the broker did not breach the standard of care of a reasonably prudent real estate broker, and that the

sellers were not liable since they were unaware of any problem with the boundaries as represented. A judgment of dismissal was thereupon entered against the buyers.

The Court of Appeals reversed, holding that an owner of realty who innocently misrepresents its boundaries is liable to the purchaser.[2] The court then extended liability for innocent misrepresentation to an owner's real estate agent and, in the alternative, held that the broker breached his duty to take reasonable steps to avoid disseminating false information to buyers.[3] The seller did not appeal the Court of Appeals decision. Thus, the question of the *owner's* liability is not before this court. The broker and the real estate company sought review of the Court of Appeals decision and we granted review pursuant to RAP 13.4(b).

Two principal issues are presented.

## ISSUES

ISSUE ONE. Should a real estate broker be held liable for innocently misrepresenting a material fact to a buyer of real property?

ISSUE TWO. Was the broker negligent in failing to verify the sellers' statements concerning the property's boundaries?

## DECISION

ISSUE ONE.

CONCLUSION. A real estate broker is held to a standard of reasonable care and is liable for making "negligent", though not "innocent", misrepresentations concerning boundaries to a buyer.

The Restatement (Second) of Torts defines the tort of innocent misrepresentation as follows:

Misrepresentation in Sale, Rental or Exchange Transaction
    (1) One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to lia-

---

[2]*Hoffman v. Connall,* 43 Wn. App. 532, 539, 718 P.2d 814 (1986).

[3]*Hoffman,* at 540–41.

bility to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

Restatement (Second) of Torts § 552C(1) (1977).

The Restatement, however, leaves open the question of whether such a cause of action lies against real estate brokers.[4] While the Court of Appeals in *Hoffman* was the first Washington court to apply § 552C to brokers, prior established Washington case law recognizes a cause of action against *owners* who innocently misrepresent the boundaries of their property to a purchaser.[5] Owners are liable for such misrepresentations because they are presumed to know the character and attributes of the land which they convey.[6]

We recognize that some other jurisdictions have agreed with the viewpoint of the Court of Appeals in this case and have held real estate brokers liable for making innocent misrepresentations on which buyers justifiably rely.[7] Courts that so hold do so because of their belief that the innocent buyer's reliance tips the balance of equity in favor of the buyer's protection. The courts justify placing the loss on the innocent broker on the basis that the broker is in a better position to determine the truth of his or her representations.[8]

This approach has been criticized for imposing a standard of strict liability for all misrepresentations that a broker might make or communicate, however innocent, in a

[4]Restatement (Second) of Torts § 552C, comment *g* (1977); *Bevins v. Ballard,* 655 P.2d 757, 762 (Alaska 1982).

[5]*See Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 454, 565 P.2d 80 (1977); *Thompson v. Huston,* 17 Wn.2d 457, 461, 135 P.2d 834 (1943).

[6]*Bevins,* at 762; *see also Hoffman,* at 538.

[7]Note, *Realtor Liability for Innocent Misrepresentation and Undiscovered Defects: Balancing the Equities Between Broker and Buyer,* 20 Val. U. L. Rev. 255, 260 (1986).

[8]Note, 20 Val. U. L. Rev. at 262; *see also Bevins,* at 763.

real estate transaction.[9] Another commentator observes the obvious—that there is a problem with subjecting brokers to liability for innocent misrepresentations without imposing a corresponding duty of inspection for defects, and that without such a duty, a broker may be tempted to provide less information to a buyer, fearing that his or her chances of exposure to liability for innocent misrepresentations will multiply with the quantity of information provided.[10]

At the other end of the spectrum from liability for innocent misrepresentation is the view that a real estate broker is an agent of the seller, not of the buyer, and is protected from liability under agency law.[11] Thus, an agent would be permitted to repeat misinformation from his principal without fear of liability unless the agent knows or has reason to know of its falsity.[12] This principle has been upheld by approximately half the jurisdictions that have addressed the issue of broker liability for innocent misrepresentations.[13] The Supreme Court of Vermont recently reaffirmed this rule, holding that "[r]eal estate brokers and agents are marketing agents, not structural engineers or contractors. They have no duty to verify independently representations made by a seller unless they are aware of facts that 'tend to indicate that such representation[s are] false.'"[14]

---

[9]Fossey & Roston, *The Broker's Liability in a Real Estate Transaction: Bad News and Good News for Defense Attorneys*, 12 U.C.L.A.–Alaska L. Rev. 37, 40 (1982–1983); *Bevins*, at 764 (Connor, J., dissenting).

[10]Note, Val. U. L. Rev. at 269.

[11]Note, Val. U. L. Rev. at 258–59.

[12]Restatement (Second) of Agency § 348, comment *b* (1958).

[13]Note, Val. U. L. Rev. at 258; *see also Prigge v. South Seventh Realty*, 97 Nev. 640, 641, 637 P.2d 1222 (1981).

[14]*Provost v. Miller*, 144 Vt. 67, 69–70, 473 A.2d 1162 (1984), quoting *Lyons v. Christ Episcopal Church*, 71 Ill. App. 3d 257, 259–60, 389 N.E.2d 623, 625 (1979).

■ A recent decision of our Court of Appeals declared a middle ground that we find persuasive. At issue in *Tennant v. Lawton,* 26 Wn. App. 701, 615 P.2d 1305 (1980) was a broker's liability for misrepresenting that a parcel of land could support a sewage system and thus was "buildable". The *Tennant* court echoed the Vermont court in holding that a broker is negligent if he or she repeats material representations made by the seller and knows, or reasonably should know, of their falsity.[15] The court went on, however, to hold that a broker has a limited duty toward a purchaser of real property.

> The underlying rationale of [a broker's] duty to a buyer who is not his client is that he is a professional who is in a unique position to verify critical information given him by the seller. His duty is to take reasonable steps to avoid disseminating to the buyer false information. The broker is required to employ a reasonable degree of effort and professional expertise to confirm or refute information from the seller which he knows, or should know, is pivotal to the transaction from the buyer's perspective.

(Citations omitted.) *Tennant,* at 706; *see also McRae v. Bolstad,* 32 Wn. App. 173, 646 P.2d 771 (1982), *aff'd,* 101 Wn.2d 161, 676 P.2d 496 (1984).

We perceive no persuasive reason to hold real estate brokers to a higher standard of care than other professionals must satisfy. We have held that lawyers must demonstrate "'that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'"[16] Chiropractors and other drugless healers owe their patients a duty to exercise reasonable care in diagnosing and treating them.[17] RCW 7.70.040(1) requires physicians

---

[15]*Tennant v. Lawton,* 26 Wn. App. 701, 706, 615 P.2d 1305 (1980).

[16]*Walker v. Bangs,* 92 Wn.2d 854, 859, 601 P.2d 1279 (1979), quoting *Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 395, 438 P.2d 865 (1968).

[17]*Mostrom v. Pettibon,* 25 Wn. App. 158, 162, 607 P.2d 864 (1980).

and surgeons to adhere to a standard of reasonable prudence.[18]

Of relevance in this connection is RCW 18.85.230(5), which provides that a real estate license may be suspended or revoked if the holder is found guilty of

> *Knowingly committing,* or being a party to, any material fraud, misrepresentation, concealment, conspiracy, collusion, trick, scheme or device whereby any other person lawfully relies upon the word, representation or conduct of the licensee;

(Italics ours.) Under this statute, a broker is only guilty of *knowingly committing* a misrepresentation. Consistent with this reading is one that would similarly find liability only when a broker is a *knowing party* to a misrepresentation.

Absent a legislative directive to the contrary, we do not consider it appropriate to impose liability on a real estate broker without a similar requirement of knowledge. Knowledge; or any reasonable notice, that the boundaries pointed out by the seller were incorrect is absent in this case, as the trial court found in its findings of fact. The following findings by the trial court are illustrative:

> There was no evidence on the property which suggested to [the broker] he should investigate the boundary lines further.[19]
>
> There was nothing in the surrounding circumstances that would have put [the broker] . . . on notice that there may have been something wrong with the property lines.[20]

This broker was thus not the guarantor of the seller's representations. If the buyers had wanted full protection against potential defects or misrepresentations, they could

---

[18]*Harris v. Groth,* 99 Wn.2d 438, 444, 663 P.2d 113 (1983).

[19]Finding of fact 19.

[20]Finding of fact 20.

have purchased appropriate title insurance.[21] The standard title insurance policy, however, usually does not require a survey and thereby does not guarantee that the purported boundaries are correct.[22] To obtain such coverage, the buyers could have purchased an extended coverage policy that usually requires a survey.[23] Such a policy affords a buyer greater protection than the standard policy.

While a broker must be alert to potential misrepresentations made by a seller, we decline to hold that a broker must guarantee every statement made by the seller. Nor, however, can a broker relay false information to a buyer without fear of liability. The trial court did not err in concluding as follows:

> A real estate broker must take reasonable steps to avoid disseminating false information to buyers. The broker is required to make reasonable efforts and use his [or her] professional expertise to confirm or refute information from a seller which he [or she] knows is pivotal to the buyer.[24]
>
> A real estate broker must exercise the degree of care that a reasonably prudent broker would use under all of the circumstances.[25]

In short, a real estate broker must act as a professional, and will be held to a standard of reasonable care. If a broker willfully or negligently conveys false information about real estate to a buyer, the broker is liable therefor. We decline, however, to turn this professional into a guarantor. Real estate agents and brokers are not liable for innocently

---

[21]*See* C. Brown, W. Robillard & D. Wilson, *Evidence and Procedures for Boundary Location* 326 (2d ed. 1981).

[22]C. Brown, at 326.

[23]C. Brown, W. Robillard & D. Wilson, *Boundary Control and Legal Principles* 24 (3d ed. 1986).

[24]Conclusion of law 2; *see Tennant,* at 706.

[25]Conclusion of law 3; *see McRae v. Bolstad,* 32 Wn. App. 173, 177, 646 P.2d 771 (1982), *aff'd,* 101 Wn.2d 161, 676 P.2d 496 (1984).

and nonnegligently conveying a seller's misrepresentations to a buyer.

Issue Two.

Conclusion. The broker did not breach the standard of care of a reasonably prudent broker.

In *Tennant,* the court found that the real estate broker failed to exercise due care to verify the "critical contingency" of an approved septic tank site on the property.[26] When the broker asked the owner for evidence of an approved percolation site evaluation for the property, the owner produced two applications for perc hold permits and asked the broker to see if they had expired. The broker reported that the applications had expired and promised to renew them. The applications stated on their face that they were for adjoining 2½–acre parcels rather than the 6–acre parcel at issue. The broker neglected to read them, to renew them, or even to check on the site evaluation, even though the buyers had made an approved septic tank site an express condition of their offer. While the broker in *Tennant* acted without malice or fraudulent intent,

> she failed to take the simple steps within her area of expertise and responsibility which would have disclosed the absence of any health district approved site on the subject property. This failure constituted negligence as a matter of law which resulted in damages to the Tennants.

*Tennant,* at 707–08.

In the present case, the improvements on the property were important to the buyers because they wanted to raise and ride horses. The broker saw markers for some of the boundaries when he walked the property with the seller, but could not locate all of the boundaries with certainty. Trees and other physical features on the land supported the sellers' representations regarding the boundaries, however, and the broker testified that the seller assured him that the improvements were inside the prop-

[26]*Tennant,* at 706.

erty line. The trial court accepted this testimony, as it was entitled to do as the fact finder in a bench trial, and expressly found that "there was absolutely nothing, I think, that would have put [the broker] . . . on notice that there may have been something wrong with the property line that imposed a duty to . . . do anything further than [he] did do in this case."[27]

The trial court is sustainable in its view that, contrary to the broker in *Tennant,/* the broker in this case had no notice that anything was wrong with the boundaries as represented by the sellers. While hindsight suggests that the broker would have done well to check on the alleged survey, there was no testimony that such a check was the prevailing practice in the real estate business. Moreover, natural and man–made boundaries reinforced the sellers' representations concerning the legal boundaries. Accordingly, the trial court did not err in finding and concluding that the broker in this case was not negligent.

Our resolution of these issues disposes of the other issues raised. The Court of Appeals decision overturning the trial court's decision on the broker's liability is incorrect.

Reversed.

PEARSON, C.J., UTTER, BRACHTENBACH, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—Contrary to the majority, I believe that a broker should be liable for any material misrepresentation he or she makes which induces buyers to act to their detriment. Furthermore, even applying the majority's far more lax standard of care, I would find the broker liable in this case. Therefore, I dissent.

### LIABILITY FOR "INNOCENT" MISREPRESENTATIONS

The majority discusses whether or not brokers should be held liable for innocent misrepresentations and concludes that brokers need only "take reasonable steps to avoid dis-

---

[27]Judge's Oral Decision, at 17–18.

seminating to the buyer false information." Majority, at 75, quoting *Tennant v. Lawton*, 26 Wn. App. 701, 615 P.2d 1305 (1980). The most recent commentary on this issue has concluded the opposite.

> Upon comparison of the strengths and weaknesses of the current legal views, the approach which appears to most effectively balance the equities between broker and buyer is one which recognizes realtor liability for innocent misrepresentation, as well as a limited and clearly defined realtor duty of inspection for defects.

Note, *Realtor Liability for Innocent Misrepresentation and Undiscovered Defects: Balancing the Equities Between Broker and Buyer,* 20 Val. U. L. Rev. 255, 271 (1986). I concur with this second view.

Washington courts have long held that a seller of land is always liable for misrepresentations, regardless of whether they are innocently or negligently made. *Lawson v. Vernon,* 38 Wash. 422, 80 P. 559 (1905); *McRae v. Bolstad,* 32 Wn. App. 173, 177, 646 P.2d 771 (1982). The basis for this rule is the belief that the owners are presumed to know the attributes and specifications of their property. *Hoffman v. Connall,* 43 Wn. App. 532, 538, 718 P.2d 814 (1986). I agree with this rule and I see no reason not to apply this logic to brokers. Brokers possess more knowledge than buyers about the attributes of the property to be sold, and innocent buyers should be able to rely on representations made by the broker. I would follow the increasing trend of state courts to impose liability on real estate brokers for any kind of misrepresentation. Note, 20 Val. U. L. Rev., at 271. *See, e.g., Bevins v. Ballard,* 655 P.2d 757 (Alaska 1982); *Gauerke v. Rozga,* 112 Wis. 2d 271, 332 N.W.2d 804 (1983).

In this case, both the majority and I conclude that the broker made a material misrepresentation which induced the Hoffmans to purchase the land, and that as a result, the Hoffmans incurred significant damages. The broker represented the property line to be located some 20 feet from where it actually was; consequently the corral, cattle run and horse shed all had to be moved so as not to encroach

on their neighbor's land. Even if the majority is correct and this misrepresentation was innocently, and not negligently, made—a conclusion I dispute—I would still hold the broker liable. Between innocent purchasers, who may justifiably rely on the broker's knowledge and expertise, and a broker, who is in a far better position to check the accuracy of any purported boundary lines, I believe the broker should be liable for any misrepresentation as to the boundary's location. Equity demands such a result.

### THE TENNANT APPROACH

The majority cites *Tennant v. Lawton,* 26 Wn. App. 701, 615 P.2d 1305 (1980) for the proposition that the rule of law should be "that the broker is liable because of material representations of the principal if he repeats them and knows, or reasonably should know, of their falsity." *Tennant,* at 706. While I note in passing that this decision is in conflict with our earlier decision in *Lawson v. Vernon, supra,* I believe that even following the rule set forth in *Tennant,* the broker in this case should still be liable.

The broker in this case testified that Mr. Connall was emphatic about the boundary of his property and that an earlier survey had indicated that his property ended just to the east of where he built his fence. Report of Proceedings, at 167–68. Nevertheless, an expert witness testified that any such survey would be a public record, and that no survey had been made of this property. Report of Proceedings, at 25. While under the standard of care propounded by the majority, a reasonably prudent broker would not be required to verify the accuracy of Connall's comments by a detailed investigation of the survey that Connall believed had been completed, the broker should at least verify the existence of the survey. This he did not do, and this failure, even under the majority's standard of care, was a breach of the duty "to take reasonable steps to avoid disseminating to the buyer false information." *Tennant,* at 706. Thus, even under the majority's more lax standard of care, the broker was negligent, and therefore, liable for the damages to the Hoffmans.

82

### CONCLUSION

I believe the majority ignores the equities of the broker–buyer relationship by allowing brokers to misrepresent material aspects of the property in question with impunity unless the buyer demonstrates that the broker knew or should have known of the statement's falsity. As between an innocent buyer and an innocent broker, I believe the buyer should prevail. Even following the majority's proposed standard of care, if a seller bases his belief of the location of the property line on a prior survey, I believe that a reasonably prudent broker would verify the purported survey does in fact exist. Failure to make this simple inquiry is negligence and actionable even under the majority's reasoning. I therefore dissent.

I would uphold the Court of Appeals decision in favor of the Hoffmans, and would remand for determination of damages.

GOODLOE, J., concurs with DORE, J.

Reconsideration denied June 18, 1987.