RONALD M. HARKALA *et al.*, Plaintiffs-Appellants, v. WILDWOOD REALTY, INC., *et al.*, Defendants-Appellees (Robert G. Hilgert *et al.*, Defendants).

First District (2nd Division)  No. 1—89—2176

Opinion filed June 19, 1990.

Jacobson, Brandvik & Anderson, of Chicago (Craig E. Anderson and Charles J. Corrigan, of counsel), for appellants.

Judge & Knight, Ltd., of Park Ridge (Elizabeth A. Brown, Janella L. Barbrow, and Sarah Hansen Sotos, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

The circuit court entered summary judgment for defendants on plaintiffs' complaint charging violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (Ill. Rev. Stat. 1981, ch. 121½, pars. 262 through 272). Later, the court directed verdicts for defendants on counts charging breach of fiduciary duty and negligent misrepresentation. Plaintiffs appeal.

Plaintiffs Ronald and Sharon Harkala (Harkalas) bought a house located at 5157 North Kilbourn in Chicago, from defendants, Robert and Lorraine Hilgert (Hilgerts). Wildwood Realty (Wildwood) acted for both the Hilgerts and the Harkalas in this transaction. Wildwood's Joe Rosprim[1] was the Hilgert's broker, and Wildwood's Mary Lou Quinn was the Harkalas' broker. The Harkalas moved into their new home on September 9, 1979. In February 1980, the Harkalas discovered that the house was termite infested.

The decade-long history of this case began on September 26, 1980, when the Harkalas filed their first complaint against the Hilgerts, Wildwood, Rosprim, Quinn and Wildwood's president, Helen Beierle. This appeal arises out of the Harkalas' second amended complaint filed on February 19, 1982, which consisted of five counts. Count I of the complaint alleged fraud against the Hilgerts, as vendors. Count II alleged negligent misrepresentations by Wildwood and its brokers (sometimes collectively defendants). Count III alleged common law fraud against defendants. Count IV alleged violations by defendants of the Act. Count V alleged a breach of fiduciary duty by the realtors.

Summary judgment in defendants' favor was granted as to counts III and IV of the second amended complaint. The order also struck count II, an amended version of which was later refiled with leave of court.

In July 1989 the cause proceeded to trial. The Harkalas adduced the following evidence. Sharon Harkala testified that she moved into the house on September 9, 1979. Wildwood's Quinn helped the Harkalas sell their old house, and they asked her to help them find a new one. Sharon first saw the Kilbourn house at an "open house" after reading about it in a newspaper. While there, the Harkalas met Wildwood's Joe Rosprim, who showed them around the house. Sharon explained that, as she toured the house, she looked for "interior type things" such as "how big the rooms were and things like that." Her

---

[1]Rosprim, who died prior to trial, was dismissed as a party during the course of the trial.

husband also looked for "the basic things that you look for in a house." At this time, no one mentioned any problems with or defects in the house. Sharon detected none. Quinn also was at the open house although she only stayed for 15 to 20 minutes; she and Quinn had little conversation on that date.

When asked by Sharon's husband about the electrical wiring, Rosprim responded that the house was in a nice area; a good buy; in good condition; and in sound condition. About one week later, the Harkalas, accompanied by Quinn, returned to the house and looked around again, checking window and room sizes. Again, Sharon noticed nothing unusual about the house. She overheard Quinn tell her husband that the house was a "good buy" and in a "good area." In September, the Harkalas bought it and moved in. Sharon never asked the Hilgerts about termites nor did she ask Quinn about any insect or structural problems.

Sharon first discovered termites in February 1980. She found little white ants crawling inside a porch post, called a pesticide control company, and had it start treatment to kill the termites. Sharon stated that she and her husband found termites in the kitchen and bathroom window sills, and in a concrete stump below some outside wood.

The evidence deposition of Charles Johnston was read into the record. Johnston knew the Hilgerts for over 30 years and was distantly related to Lorraine Hilgert. In 1976, Johnston did repair work on the Hilgert home, fixing the gutters, the window sills and the cement stoop. Hilgert had told Johnston that every time it rained, water would come down the side or leak in and cause the wood to rot. Johnston saw no termites during his repairs; the wood he used to cover the cement stoop was brand new and bug free. Hilgert never asked Johnston to rip out the wood, but just to seal it. Johnston concluded further that the damage was all water related.

Ronald Harkala's testimony mirrored his wife's in all material aspects. He insisted Rosprim told him, during the open house, that the house was in good condition and that he "shouldn't have any problems with it." Harkala did not recall any further conversation with Rosprim or Quinn. On the second visit to the house one week later, Harkala looked at the rooms "basically to visualize the size of the rooms for the furniture in the bedrooms." Harkala spoke with Hilgert regarding the electrical wiring of the house. Hilgert told him of a defective garage door. Harkala saw no other defects, stating the house looked "very clean" and "very nice."

After the Harkalas discovered termites, they made extensive repairs

to the house. Harkala did some of the work himself, and he hired a contractor to do the rest. Harkala did not ask either the realtors or the Hilgerts about possible termite infestation, nor did he ask about the condition of the roof, whether the windows leaked or when the house had last undergone major repair. He had no inspections done before the closing. Quinn told him the house was "structurally sound."

Ronald Harkala's mother, Mildred, testified that she accompanied him and his wife to the Hilgert open house. At the open house, Rosprim told them that the house was in "very good condition." Mrs. Harkala also stated that the house looked "very nice."

Robert Hilgert testified that he was the previous owner of the home, having purchased it in 1972. In 1976, Hilgert instructed Johnston to do some repairs, and Johnston complied. The following year Hilgert painted the house "inside and out." He never saw any termites at that time.

The Harkalas questioned Quinn as an adverse witness. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102.) Quinn was not initially at the Hilgert open house with the Harkalas, having been conducting another open house in the vicinity. The Harkalas stopped by and asked her to accompany them to look at a house they claimed was "perfect" for them. The Harkalas showed Quinn the house on Kilbourn, asking for her opinion. She left after 15 minutes; she could not recall either saying that the house was "in good condition" or visiting the house a second time.

Quinn explained that, prior to visiting the Hilgert home, she had given the Harkalas information as to all the property in the area in the price range they were looking for. The Hilgert property was not an exclusive listing, but was on a "multiple listing." Realtors are "free to show other office's listings." Quinn was not familiar with the condition of the Hilgert home; it was not her job to do an investigation. She only received commissions when she sold another office's property. Wildwood received two commissions on the Hilgert/Harkala sale; however, both commissions were paid by the Hilgerts.

Helen Beierle, president of Wildwood Realty, testified that she had never met the Hilgerts until the first day of trial. She stated that the area in question did not have a reputation for insect infestation.

Defendants moved for a directed verdict, arguing that plaintiffs produced no evidence showing that the house was infested with termites before they moved in 1980 and that defendants had no duty to discover latent defects. The court reserved its ruling on the motion.

Jerome Serszen, a real estate appraiser for the Harkalas' mortgage holder, testified that he appraised the house on August 9, 1979.

He noticed nothing unusual. His report, made at the time, indicated no check next to the area concerning termites, which meant that "they weren't checking it for termites, for infestation of any type." Had Serszen noticed any termite or water damage, he would have changed his opinion regarding the house. Serszen valued the home at $73,500.

Mary Lou Quinn testified in her own behalf consistently with her earlier statements. She represented the Harkalas in the sale of their former house on Linder in Chicago. For their new home, the Harkalas' main concerns were location, safety for their children, and price. The house "appearance-wise" was in good condition. She denied telling the Harkalas that it was a "good buy." On July 16, 1979, she conveyed the Harkalas' offer of $73,500 to the Hilgerts. Quinn worked very hard to get the Harkalas a favorable mortgage. She was not the one who informed them of the availability of the Hilgert home. She never told them that the property was a better piece of property than any other property. She denied accompanying the Harkalas on their second visit to the house. She lives in the same area of Chicago as the house in question, but never heard that it had a reputation for termites. Since the closing, in February 1980, Ronald Harkala called her and told her that he had been doing repairs in the kitchen and the "window came out too easily, it fell out of [his] hands." She was "shocked" at this report. The next time she saw him, after the instant litigation had started, she asked him, "[H]ow can you do this? [Y]ou know that the accusations are not true." Harkala allegedly replied, "I know but our attorney says you have to sue everybody involved in the case—it's a shotgun approach."

Defendants rested and again renewed their motion for a directed verdict. At that time, the Harkalas voluntarily dismissed Beierle from the action. The court granted defendants' motion, stating that there was no evidence of defendants' wrongdoing.

The trial thereafter proceeded to a jury verdict, which found the Hilgerts liable to the Harkalas in the sum of $10,500. The Hilgerts are not a party to this appeal.

On appeal, the Harkalas seek review of the September 22, 1988, order granting summary judgment for defendants on their consumer fraud violation cause of action and challenge the court's directed verdicts entered July 12, 1989.

## I

The Harkalas contend that the circuit court erred in dismissing count IV of their complaint, which alleged that defendants violated

section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262).

■■ ■ Section 2 of "An Act to protect consumers *** against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) applies to misrepresentations by real estate brokers to prospective purchasers (*Seligman v. First National Investments, Inc.* (1989), 184 Ill. App. 3d 1053, 1063, 540 N.E.2d 1057; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448), defining a deceptive practice as the "concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) The Act is intended to provide broader consumer protection than the common law action of fraud (*Kellerman v. Mar-Rue Realty & Builders, Inc.* (1985), 132 Ill. App. 3d 300, 306, 476 N.E.2d 1259); therefore, a plaintiff need not show actual reliance or diligence in ascertaining the accuracy of the misstatements. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 485 N.E.2d 855 (*Munjal*); *Beard v. Gress*, 90 Ill. App. 3d at 627-28.) The good or bad faith of the seller is irrelevant under the Act; consequently, a plaintiff can recover for an innocent misrepresentation. (*Munjal*, 138 Ill. App. 3d at 183; *Beard v. Gress*, 90 Ill. App. 3d at 627-28.) The Act, however, should not be used to turn nondeceptive and nonfraudulent statements or omissions into actionable affirmations. *Kellerman*, 132 Ill. App. 3d at 306.

■■ ■ The Harkalas argue that Wildwood's representations that the house was a "good buy"; in "very good condition"; and in sound condition and that plaintiffs "shouldn't have any problems with it" were misrepresentations in violation of the Act. A similar contention was raised in *Munjal*, but the appellate court disagreed, declining "to find a real estate broker liable for latent or hidden defects of which he had no prior knowledge." *Munjal*, 138 Ill. App. 3d at 183.

The legislature amended the Act in 1982, which excluded:

> "The communication of any false, misleading or deceptive information, provided by the seller of real estate located in Illinois, by a real estate salesman or broker licensed under "The Real Estate Brokers License Act," *unless the salesman or broker knows of the false, misleading or deceptive character of such information.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4).)

This is persuasive evidence that the Act was not intended to impose liability upon a broker for latent or hidden defects. The Harkalas ar-

gue that the amendment does not apply to defendants because it concerns only representations made by the seller and passed along innocently to the buyer by way of a broker and the Hilgerts never represented to defendants that the house was structurally fit. The Hilgerts carefully concealed all signs of the termite damage; these cosmetic physical manifestations served to make a sufficient, albeit nonverbal, misrepresentation so as to come within the policy of the Act's provisions in this case.

In her affidavit, Quinn swore that she had no knowledge of whether the house was infested with termites and that she knew of no facts, circumstances or conditions that would lead her or anyone to believe that the house was then or ever had been termite infested. Helen Beierle's affidavit stated the same facts, adding that Rosprim, deceased by then, had been the "listing" agent for the house. The Harkalas' complaint alleges that the "[v]endors made *** repairs which concealed all evidence of termite damage and/or infestation with the express intention of inducing plaintiffs to believe that said property was in good repair *** [and that the] damage would not be apparent to plaintiffs upon an ordinary inspection of the house." The concealment of the damage was so effective that, at her deposition, Sharon Harkala agreed Quinn could not have known that there were termites in the wall unless she took the wall down or apart. In *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623 (*Lyons*), the court, in addressing the tort of negligent misrepresentation, held that there is no breach of duty unless the realtor could have discovered the falsity of the representation by exercise of ordinary care. (*Lyons*, 71 Ill. App. 3d at 260.) Neither *Munjal* nor *Lyons* creates a duty for realtors to undertake an investigation for hidden or latent defects. We hold that in the absence of any reason to do so, as in this case, there was no duty imputable to defendant brokers that would have compelled them to investigate plaintiffs' home for concealed impairment of its structure.

■■ ■ The identification of duty is a matter of law to be determined by the court; and, where an issue is solely one of law, as here, summary judgment is proper. *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 215, 531 N.E.2d 1358; *Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 348, 546 N.E.2d 651.

Based upon the foregoing, the circuit court correctly granted summary judgment to defendants on the consumer fraud cause of action.

II

The Harkalas next assert that the circuit court erred in directing

a verdict for defendants on the breach of fiduciary duty claim.

■■ ■ A motion for directed verdict should be granted only when all the evidence, viewed favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In deciding whether the circuit court erroneously directed a verdict, a reviewing court applies the same standard that was applied at the trial level. *Thomas v. Nelson Brothers Furniture Co.* (1988), 167 Ill. App. 3d 49, 520 N.E.2d 1078.

■■ ■ A real estate broker can become the agent of the purchaser for a particular transaction, if the purchaser requests the broker's assistance in obtaining a particular piece of property. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 171, 510 N.E.2d 65.) The Harkalas allege in their third amended count II that Quinn agreed to become their agent. Real estate brokers occupy a position of trust with respect to purchasers with whom they are negotiating and owe a duty to exercise good faith in their dealings with purchasers. (*Munjal*, 138 Ill. App. 3d at 181; *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 385-86, 432 N.E.2d 849.) Misrepresentations of material facts made intentionally by a broker and relied upon by purchasers may be the basis of a suit for fraud and deceit. *Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 891, 453 N.E.2d 1129; *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 491-92, 429 N.E.2d 1267.

■■ Here, the evidence does not show that Wildwood or Quinn either intentionally or in culpable ignorance of the truth misrepresented that the house was termite-free. The record reveals that Charles Johnston elaborately repaired the Hilgert home to the point where all those who viewed it considered it attractive. Plaintiffs, themselves, never asked any questions regarding structural damage or pest problems, nor did they make use of their contractual right to freely inspect the premises. Nothing in the record suggests that the brokers should have been looking for termite problems or damage when neither the sellers nor the appearance of the home gave evidence of infestation. The Harkalas, however, argue that the liability arose when the defendants falsely represented that there were no defects in the house.

In *Munjal*, the appellate court was "unwilling to find a duty on the part of a real estate broker to discover any latent material defects on property which a seller has not disclosed to him prior to sale" (*Munjal*, 138 Ill. App. 3d at 182), because such a duty would place an unwarranted burden on brokers. We find this rationale compelling.

The Harkalas cite several out-of-State decisions as authority for their position, among them *Hoffman v. Connall* (1986), 43 Wash. App. 532, 718 P.2d 814. There, the appellate court ruled that a broker could be liable for making negligent misrepresentations to buyer; however, this holding was later reversed by the Washington Supreme Court, which found that a broker is not liable if the sellers give no indication that there is a need to confirm the representations. (See *Hoffman v. Connall* (1987), 108 Wash. 2d 69, 736 P.2d 242.) In *Bevins v. Ballard* (Alaska 1982), 655 P.2d 757, the court held that, under the theory of negligent misrepresentation, a duty arises when a broker becomes aware of facts contrary to his representations or when a buyer makes an affirmative inquiry and the broker fails to check the accuracy of his response. Similar circumstances did not arise in the present case. Finally, in *Gouveia v. Citicorp Person-to-Person Financial Center, Inc.* (1984), 101 N.M. 572, 686 P.2d 262, the court recognized that if a broker exercising reasonable care should have had actual knowledge of defects in the property, he may be liable for negligent failure to discover and disclose them. The evidence in the case *sub judice,* however, does not indicate that Quinn or Wildwood knew or should have known that the house was structurally unsound, especially since the Harkalas made only vague inquiries into the building's general fitness. The Harkalas never specifically asked Quinn or Rosprim about insect infestation or other particular types of damage or problems. The foreign authorities are of little support to plaintiffs under these facts.

Upon this record, the circuit court did not err in directing the verdict for the defendants on this issue.

### III

The Harkalas lastly argue that the court erred in directing the verdict for defendants on their negligent misrepresentation cause of action.

■■ The elements of a negligent misrepresentation include a duty owed by defendant to plaintiff, a breach of such duty, and injury proximately resulting from such breach. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409; *Lyons,* 71 Ill. App. 3d at 259.) Illinois courts have adopted the tort of negligent misrepresentation from the formulation of the Restatement (Second) of Torts. Restatement (Second) of Torts §552 (1977).

■■ The test of negligent misrepresentation involves the breach of a duty to use care in obtaining and communicating information upon which others reasonably may be expected to rely in the conduct of their affairs. (*Zimmerman,* 156 Ill. App. 3d at 163.) The person

making a representation may believe it to be true, but because of negligent expression it is, in fact, false. (*Zimmerman*, 156 Ill. App. 3d at 163; *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473.) In *Lyons*, the court upheld vendor liability under this theory based upon the vendor's statement that the property was fully connected to the local sewer system, except for a particular basement drain which was connected only to a septic tank. Upon reviewing the evidence, the court noted that several of the vendor's officers were generally aware of the possibility of septic tank service, but took no steps to ascertain its applicability to the property at issue. (*Lyons*, 71 Ill. App. 3d at 261.) The vendor's broker, however, was not found liable because the court ruled that she did not have a duty to independently substantiate the vendor's representation unless she was aware of facts which tended to indicate that the seller's representation was false. *Lyons*, 71 Ill. App. 3d at 261; see also *Rotello v. Scott* (1981), 95 Ill. App. 3d 248, 419 N.E.2d 1233.

The Harkalas point to a number of decisions from other States as persuasive authority for imposing liability on brokers when termites are discovered after the purchase of realty. One such case, *Hughes v. Holt* (1981), 140 Vt. 38, 435 A.2d 687, however, is not in point as the court reversed the jury's verdict because of an erroneous instruction regarding the burden of proof on a fraud count. *Miles v. McSwegin* (1979), 58 Ohio St. 2d 97, 388 N.E.2d 1367, concerns the buyers' mortgage holder's inspection of the house which found termites; however, the lender did not tell the buyers after obtaining this knowledge. Clearly, this does not apply to the instant case, where the evidence does not suggest that the realtors ever knew that termites were present at the Hilgert home. Another inapposite decision, *Maser v. Lind* (1967), 181 Neb. 365, 148 N.W.2d 831, held that a misrepresentation of the condition of buildings by the vendor is actionable if made and relied upon as a positive statement of an existing fact where the purchaser by the exercise of ordinary care is unable to discover the true damaged condition. No brokers were involved in that transaction; the vendors here, the Hilgerts, were found guilty by the jury and have not appealed.

In a recent American Law Report annotation, in every case imposing broker liability, but one, real estate brokers were held liable to purchasers for termite damage only where the brokers concealed or failed to disclose their knowledge of the specific problem by suppressing reports of termite infestation; or affirmatively asserted that no termite damage existed; or were specifically asked by the buyers to secure a termite inspection. (Annot., 46 A.L.R.4th 601 (1986).) The

one exception did not discuss these issues. In contrast here, no allegations were made, nor evidence of the brokers' knowledge demonstrated, nor concealment of reports shown, nor specific reassurances communicated to plaintiffs by the brokers.

■■ The testimony adduced at trial here produced no evidence to support the Harkalas' allegations that defendants knew or should have known of the termites and their damage without tearing down the walls and conducting tests. Nothing in the record indicates that, in the absence of some reason to do so, the brokers should have undertaken such action. We are unwilling to impose that burden upon them under the facts of this case.

From the foregoing, it is clear that the circuit court properly directed a verdict for defendant brokers on the negligent misrepresentation count.

The circuit court decisions entering summary judgment on plaintiffs' consumer fraud count and directing verdicts on the remaining counts must be affirmed.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.