HELEN THOMAS, Adm'x of the Estate of Joe Frank Thomas, Plaintiff-Appellant, v. NELSON BROTHERS FURNITURE COMPANY, Defendant-Appellee (Hal Smith *et al.*, Defendants).

First District (2nd Division)   No. 87—680

Opinion filed March 1, 1988.

James H. Porn, Ltd., of Chicago (Michael W. Rathsack, of counsel), for appellant.

Tenney & Bentley, of Chicago (Richard J. Cochran and Edward Eshoo, Jr., of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

On November 27, 1978, a southbound vehicle struck and killed six-year-old Joe Frank Thomas (Thomas) while he was crossing Wabash Avenue in Chicago. Just before striking Thomas, Josie Eubanks (Eubanks), driver of the southbound vehicle, veered around a Nelson Brothers Furniture Company (Nelson Brothers) truck that Hal Smith (Smith), a Nelson Brothers employee, had parked on the west side of Wabash Avenue. The plaintiff, Thomas' mother (Mrs. Thomas), filed a lawsuit naming Eubanks, Smith, and Nelson Brothers as defendants. During the course of the trial, Mrs. Thomas settled with defendant

Eubanks and voluntarily dismissed defendant Smith from the lawsuit. The only issue presented to the jury at trial, therefore, was the liability of Nelson Brothers. When the jury was unable to reach a unanimous verdict, the trial judge declared a mistrial. The trial judge then granted the defendant's post-trial motion for a directed verdict. Shortly thereafter, the plaintiff appealed.

On November 27, 1978, Thomas came home from school, did homework, and went outside to play in the snow with his cousins and three other friends. Once outside, the boys made a snowman and had snowball fights. The boys ended up playing on the 7100 block of South Wabash Avenue.

Wabash Avenue runs north and south and traffic moves only in a southbound direction. The surrounding neighborhood is a residential area. At the time of the accident, Smith and his assistant Andre Perkins (Perkins), in their capacity as Nelson Brothers employees, were delivering furniture to 7120 South Wabash Avenue. Smith was driving a white truck with blue Nelson Brothers lettering on it. While Perkins delivered the furniture to the customer, Smith parked the 22-foot-long truck on the west side of the street directly in front of 7120 South Wabash Avenue.

The witnesses gave conflicting testimony as to how the truck was parked. Nettie Cannon, a woman who lived on the east side of Wabash Avenue at 7127, testified that the Nelson Brothers truck was double-parked for approximately 12 to 15 minutes. Reginald Love, who lived on the east side of Wabash Avenue, went out on the evening of the accident to move his car to a parking space that had opened up in front of his house. Reginald Love noticed the truck across the street appeared to be double-parked. Charles Dean, who also lived on the east side of Wabash Avenue, testified that the truck was parked approximately seven to eight feet away from the west curb.

Thomas' cousins, Leroy and Harold Rainey, testified that other cars were parked between the west curb and the Nelson Brothers truck. Smith, the driver of the truck, stated that he had double-parked alongside of some cars and that he had backed up his truck into whatever space was available, leaving the back end of the truck sticking out a bit. Perkins testified that Smith had backed the truck in the best that he could but that the truck's back end was sticking out into the street. Eubanks likewise stated that just the back end of the truck jutted out into the street.

It was about 6 p.m. when Perkins exited the truck to make the delivery; it was dark and snowing lightly. While waiting in the truck, Smith observed three or four children playing and hollering nearby.

Eubanks was returning home from work when she turned southbound onto Wabash Avenue.

The witnesses gave differing accounts as to how Eubanks drove her vehicle. Smith testified that Eubanks traveled at about 20 miles per hour, stopped behind the truck for three to four seconds and then proceeded to veer around the truck. Leroy Rainey stated at trial that Eubanks stopped for a few moments behind the truck before she "whipped around" the truck and struck Thomas. Eubanks testified that she was traveling at 15 to 20 miles per hour, and that she did not bring her car to a stop before veering slightly to her left to pass the truck.

In the meantime, Thomas was standing on the east side of Wabash Avenue at the concrete drive preparing to cross to the west side of the street. Leroy Rainey testified that Thomas looked north, saw no cars and then began to run across the street. Leroy Rainey hollered out Thomas' nickname, Tiger, and Thomas stopped, at which time the car struck Thomas. According to Leroy Rainey, there was nothing in the street to obstruct the vision of Eubanks. Eubanks testified that she did not see Thomas until the impact and that the Nelson Brothers truck did not obstruct her view of the child.

The passenger side of the car hit Thomas and carried him to the southernmost manhole. As a result of the accident, Thomas died. Mrs. Thomas filed a complaint and named Eubanks, Smith, and Nelson Brothers as defendants. On June 11, 1986, Mrs. Thomas voluntarily dismissed Smith as a party defendant. One month later, Mrs. Thomas settled with Eubanks and she was also dismissed from the lawsuit.

The only issue presented to the jury was the liability of Nelson Brothers. The plaintiff's theory at trial was that the position of the Nelson Brothers truck obstructed Eubanks' view of the decedent or the decedent's view of Eubanks' automobile, thereby proximately contributing to Thomas' death. Nelson Brothers moved for a directed verdict both at the close of the plaintiff's case and at the conclusion of all the evidence. The trial court denied both motions. When the jury was unable to reach a unanimous verdict, the trial judge declared a mistrial. Nelson Brothers then filed a post-trial motion for a directed verdict. The trial judge granted the motion. On February 27, 1987, the plaintiff filed notice of her appeal.

In the case at bar, the plaintiff first contends that the trial court erroneously granted the defendant's post-trial motion for a directed verdict because the trial court twice denied that motion during trial but later granted the motion after the jury was discharged and a mistrial was declared. Second, the plaintiff contends that a question of

fact existed as to whether the position of the Nelson Brothers truck was a proximate cause of Thomas' death and that in applying the *Pedrick* standard, the trial court should not have granted the defendant's motion for a directed verdict. While we disagree with the plaintiff's first contention, we agree with the plaintiff's second contention and reverse and remand the case for trial on that basis. Each of the plaintiff's contentions will be dealt with respectively.

"Relief after trial may include the entry of judgment if under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury, even though no motion for directed verdict was made *or if made was denied* or ruling thereon reserved." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1202(b).) Furthermore, "[p]ost-trial motions must be filed within 30 days after the entry of judgment *or the discharge of the jury, if no verdict is reached,* or within any further time the court may allow within the 30 days or any extensions thereof." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 2—1202(c). See also *First National Bank v. Porter* (1983), 114 Ill. App. 3d 1, 448 N.E.2d 256.

In *Porter,* the plaintiffs sued the defendants for medical malpractice. The plaintiffs alleged that as a result of the defendants' negligence, their son suffered severe brain damage. At the close of all the evidence, the defendants moved for a directed verdict and the plaintiffs sought a directed verdict as to liability. The trial court reserved ruling on both motions. The trial court then discharged the jury after it failed to reach a verdict. Thereafter, the trial court granted the defendants' motions for directed verdicts. *Porter,* 114 Ill. App. 3d at 9.

On appeal, the plaintiffs contended that the trial court was without authority to consider the defendants' motions for directed verdicts. The plaintiffs' argument rested on the theory that a mistrial "vitiates all prior proceedings." In interpreting section 68.1 of the Illinois Civil Practice Act (now section 2—1202 of the Illinois Code of Civil Procedure), the appellate court held that the statute allowed the trial court "to grant a directed verdict on a post-trial motion where ruling on the directed verdict motion had been reserved before the case went to the jury and where the jury failed to reach a verdict." *Porter,* 114 Ill. App. 3d at 10-11.

The language of section 2—1202 clearly states that post-trial relief may include the entry of judgment even though the party's motion for a directed verdict was denied earlier. Similarly, the *Porter* court applied section 2—1202 to the situation where the trial court had reserved its ruling on motions for directed verdicts. As indicated

above, the *Porter* court held that the trial court acted properly when, after a mistrial, it granted the defendants' motions. In light of section 2—1202 and *Porter,* we hold that the trial court in the instant case acted properly when it considered the defendant's post-trial motion for a directed verdict even though the trial court twice denied the motions during trial and declared a mistrial after discharging the jury.

■ In deciding whether to direct a verdict, the trial court must apply the standard that the Illinois Supreme Court set forth in *Pedrick. (Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 335, 456 N.E.2d 192.) A trial court may enter a directed verdict in "those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In deciding whether the trial court erroneously directed a verdict, the reviewing court is to apply the same standard that was applied at the trial level (*Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 753, 365 N.E.2d 1065) and take into consideration the fact that the trial court saw and heard the witnesses. *Smith v. Bishop* (1965), 32 Ill. 2d 380, 384, 205 N.E.2d 461.

In granting the defendant's post-trial motion for a directed verdict in the case at bar, the trial court stated that in its opinion, "the evidence considered in its totality fails to show wherein the position of the defendant's truck caused any obstruction which was the proximate cause of injury and death sustained by the plaintiff's decedent. Of all of the witnesses to give testimony, none testified adversely to defendant on that point."

We find that the trial court erred in granting the defendant's post-trial motion for a directed verdict. After a careful review of the trial record, we conclude that the evidence, when viewed in its aspect most favorable to Mrs. Thomas, does not so overwhelmingly favor Nelson Brothers that a verdict in favor of Mrs. Thomas, based on the evidence, could never stand.

In view of the foregoing, the judgment of the circuit court of Cook County is reversed and the case is remanded for further proceedings.

Reversed and remanded.

BILANDIC and SCARIANO, JJ., concur.